# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

ROBERT M. LEWIS,                )
                                )
              Plaintiff,         )
                                )
        v.                       )        No. 10-cv-02138
                                )
MOWHAWK ESV,                     )
INCORPORATED,                    )
                                )
              Defendant.         )

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter is before the Court on Defendant's Motion for Summary Judgment.  (d/e 15).  Defendant's Motion is GRANTED because no reasonable juror could infer Defendant's stated reason for terminating Plaintiff's employment was a pretext to age discrimination.

## I. FACTUAL BACKGROUND

This Court considers facts in the light most favorable to the non-moving party at the motion for summary judgment stage.  Trentadue v. Redmon, 619 F.3d 648, 652 (7th Cir. 2010).  Accordingly, the facts taken in the light most favorable to Plaintiff are as follows.

Defendant, Mohawk ESV, Inc.[1], an Equal Employment Opportunity ("EEO") employer, operates a manufacturing and sales business that specializes in flooring products (carpet, tile, ceramic, wood floors, laminate, etc.).  Defendant's EEO policy includes mechanisms for employees to report perceived unlawful discrimination and/or harassment.

Defendant also maintains an employment manual entitled "recruiting. hiring. and firing."  Pl.'s Resp. Mot. Ex. 2(a), (b).  The manual calls for fair notice and warnings about the specific consequences for improper employee conduct.  However, the manual does not set forth specific steps for employment termination decisions, and employee dismissal remains possible if that represents the "best option."  Pl.'s Resp. Mot. Ex. 2(a), (b) at 50.  Plaintiff submitted this manual to the Court, but did not include a supporting affidavit to verify the manual's authenticity.

In 1985, Horizon, a company Defendant purchased in the summer of 1992, hired Plaintiff, Robert M. Lewis, born February 21, 1958.  Plaintiff began his career as a Territory Manager.  He remained a Territory Manager until 1999 when

---

[1] Defendant points out that Plaintiff incorrectly denominated Defendant as Mohawk ESV, Incorporated, rather than Mohawk ESV, Inc., in Plaintiff's Complaint.  However, in light of the outcome of Defendant's Motion, and because neither party has moved to correct the incorrect denomination of Defendant in the Complaint, the incorrect denomination of Defendant carries no significance in this case.  See Jones v. Centurion Inv. Associates, Inc., 268 F. Supp. 2d 1004, 1006 n.1 (N.D. Ill. 2003) (finding that plaintiffs' incorrect denomination of the defendant carried little significance because the correct defendant was before the court, neither party moved to correct the mistake, and because the court granted the defendant's motion for summary judgment).

Defendant promoted him to District Manager.  As District Manager, Plaintiff
oversaw the Illinois District which included managing seven or eight Territory
Managers.

In 2004, Defendant promoted Plaintiff to General Sales Manager for the
Midwest Region.  Gary Bengtson, Defendant's former Regional Vice President,
and Gary Hollowell, Defendant's Vice President of Sales, selected Plaintiff for the
General Sales Manager position.

Plaintiff undertook numerous responsibilities in his role as General Sales
Manager.  For example, he oversaw the regional sales department. This included
approximately forty salespersons and several District Managers.  He also reported
sales-related activities to Bengtson.

In 2006, Plaintiff traveled to Defendant's regional headquarters in Chicago
to aid with Defendant's restructuring.  Plaintiff states that Bengtson made remarks
during this period about replacing three older sales representatives in the Chicago
Region.  Specifically, Plaintiff states that Bengtson said "we need to get some new
blood in here and we have some old guys that are not pulling their weight."  Pl.'s
Resp. Mot. at 17.  The three representatives Bengtson was referring to were Lenny
Parmezak, Larry Barker, and Randy Gill.  Plaintiff acknowledges that the three
workers Defendant released in the Chicago Region had performed poorly prior to

their termination.  Lewis Dep. at 106.

Plaintiff also states that Tim Simmons, Defendant's former General Sales Manager for the Minnesota area, made age-based discriminatory comments in Bengtson's and Plaintiff's presence during Defendant's restructuring period in 2006.  Plaintiff states that Simmons said "we need to get rid of the old guy[, h]e's a trouble maker."  Lewis Dep. at 107.  Simmons comments alluded to replacing a long-term sales representative in Wisconsin, Jim Titzkowski.  Plaintiff acknowledged in his deposition that Titzkowski became complacent as he aged. Lewis Dep. at 108.

Defendant eliminated all General Sales Manager positions in 2008. Bengtson informed Plaintiff about this decision and offered Plaintiff the choice of returning to a District Manager position or becoming a Regional Builder Manager. Plaintiff accepted the Regional Builder Manager position.  Thereafter, Bengtson announced Plaintiff's decision to Defendant's sales group in Plaintiff's Region. Plaintiff began working as Regional Builder Manager on October 10, 2008.

Defendant alleges that the announcement of Plaintiff's decision to assume the Regional Builder Manager position facilitated negative feedback from employees Plaintiff had worked with or supervised during his time with Defendant. For example, Bengtson received unsolicited negative comments almost

immediately from Lyle Larson (an employee for approximately fifty years with Defendant and Manager subordinate to Plaintiff), Ken Bailey (Kansas City District Manager), and Dan Housley (St. Louis District Manager).

This unsolicited feedback included information from District Manager Bailey about a comment made by Plaintiff to Bailey.  Bailey stated that Plaintiff said something like "shut the fuck up and let me handle it" on a customer call.  Def.'s Mot. at 6.  Plaintiff admitted making the comment to District Manager Bailey.  Lewis Dep. at 114.

Plaintiff also stated in his deposition that he had no reason to think that District Managers Housley or Bailey would lie about his conduct.  Lewis Dep. at 79-80, 85.  Moreover, Plaintiff only speculated that Larson's comments may have been influenced by office politics.  Lewis Dep. at 76.

After receiving the unsolicited feedback from Larson, Bailey, and Housley, Bengtson contacted Scott Jaeger, Manager of National Accounts, and Tim Simmons, Defendant's former Minnesota area General Sales Manager.  Jaeger and Simmons provided additional negative reports regarding Plaintiff's conduct.

Bengtson also talked to "[h]alf a dozen to a dozen" other employees about Plaintiff.  Def.'s Mot. at 9.  Defendant's description of the alleged negative feedback regarding Plaintiff generally indicated that Plaintiff lacked "interpersonal

skills and [the] ability to deal with people, including subordinates and customers, was not very good, and that placing him in [the Regional Builder Manager] position would be a bad decision."  Def.'s Mot. at 5.

Additionally, Defendant submitted an Affidavit from Bengtson that lists the types of comments Defendant's employees provided Bengtson regarding Plaintiff. The comments include that "[Plaintiff's] opinion of people is always negative; [and h]e is not assertive on sales calls with customers—he does not take charge and is not in control in those situations."  The Affidavit also states that employees expressed concern because "[Plaintiff] has an 'arrogant' air about him; [h]e is not respectful to his people and can be overbearing and negative[.]"  Moreover, the Affidavit raises other issues such as "[Plaintiff's] people do not respect him; [s]ubordinates are afraid to ask for help or advice because they fear being demeaned by him[;] he provides few compliments to his employees; [and h]e has no respect from customers for these same reasons—no real customer relations[,] in fact, several customers do not want him to call on them."  Finally, the Affidavit states that "Lyle Larson . . .[, said] something to the effect of '[Plaintiff] is not assertive on sales calls.  He does not take charge and is not in control.'"  Def.'s Mot. Ex. D, Bengtson Aff. at ¶¶ 7-8.

Bengtson stated in his deposition that all of the negative comments about

Plaintiff surprised him.  Bengtson Dep. at 73.  He thought that Plaintiff possessed

capable managing skills and demanded good performance from subordinates.

Bengtson also stated that Plaintiff maintained good sales figures.  Bengtson Dep. at

20.

Bengtson, however, believed that the problems concerning Plaintiff's

performance as conveyed by Defendant's other employees were too extreme to

overlook.  Bengtson decided to terminate Plaintiff immediately.  Bengtson

informed his superior, Gary Hollowell, and David Westerfield, Defendant's Senior

Director of Human Resources, about the decision.  Hollowell and Westerfield

agreed with Bengtson.

Bengtson and Tom Shepardson, Defendant's Regional Vice-President on the

hard-surface flooring side of the business, met with Plaintiff on October 16, 2008.

Bengtson informed Plaintiff about the negative comments he had received.

Bengtson then terminated Plaintiff's employment without prior notice to Plaintiff

that his conduct and performance had fallen below Defendant's expectations.

Plaintiff was 50 years old when Defendant terminated his employment.  Bengtson

is over 60 years of age.  Defendant replaced Plaintiff with 41 year-old Chris Reed.

## II. PROCEDURAL BACKGROUND

On April 13, 2009, Plaintiff filed a complaint with the Illinois Department of

Human Rights ("Department").  The complaint alleged that Defendant had

discriminated against Plaintiff based on his age when Defendant terminated

Plaintiff's employment.  The Department conducted an investigation and provided

Plaintiff with notice on February 18, 2010 that "within 90 days after receipt of the

Department's notice," he could "either file [a] complaint with the Illinois Human

Rights Commission or commence a civil action in the appropriate circuit court or

other appropriate court of competent jurisdiction."  775 ILCS 5/7A-102.

Plaintiff filed his Complaint in the Circuit Court for the Sixth Judicial

Circuit, Macon County, Illinois, on or about May 5, 2010.  The Complaint alleged

that Defendant discriminated against Plaintiff based on Plaintiff's age in violation

of the Illinois Human Rights Act ("IHRA").  775 ILCS 5/1-103(A).

Defendant received a copy of the Complaint and Summons on June 7, 2010.

Defendant subsequently removed this case to federal court.  See 28 U.S.C. § 1446.

In the Complaint, Plaintiff seeks both economic and non-economic damages.

The economic damages include the difference between Plaintiff's current salary

and his salary when he worked for Defendant.  Plaintiff earned approximately

$150,000 per year in his position with Defendant.  Compl. at ¶ 19.  Plaintiff alleges

that he now earns approximately one-half of that amount.  Compl. at ¶ 19.  The

non-economic damages sought stem from alleged embarrassment, emotional

distress, and injury to reputation.  In total, the damages sought exceed $75,000.

Plaintiff also seeks costs expended and attorney fees accrued.  The matter is now

before the Court on Defendant's Motion for Summary Judgment.

### III. <u>JURISDICTION AND VENUE</u>

This Court has subject matter jurisdiction in this case pursuant to the Court's

diversity jurisdiction.  For the Court to have diversity jurisdiction, the matter must

be a civil action between citizens of different states with an amount in controversy

that exceeds the sum or value of $75,000.  28 U.S.C. § 1332.  Plaintiff is a citizen

of the State of Illinois.  <u>See</u> 28 U.S.C. § 1332(a)(1).  Defendant is a corporation

incorporated under the laws of Delaware.  Defendant's principal place of business

is in Calhoun, Georgia.  For diversity jurisdiction purposes, Defendant is a citizen

of Delaware and Georgia.  <u>See</u> 28 U.S.C. § 1332(c)(1).  Further, this civil matter

involves alleged damages over $75,000.  Consequently, this civil action involves

parties from different states and an amount in controversy that exceeds $75,000.

Venue is also proper.  This lawsuit stems from the allegedly unlawful

decision by Defendant to terminate Plaintiff's employment in Decatur, Illinois.

Pursuant to 28 U.S.C. § 1391(b)(2), a civil action may be brought in a federal

judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred.  Decatur is located in Macon County.  Macon County is in the

Urbana Division of this judicial District.  See CDIL-LR 40.1(D).  After removal,

this case was transferred from the Urbana Division to the Springfield Division of

the Central District of Illinois.

## IV.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317,

322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).  This

requires the moving party to show that no "reasonable jury could return a verdict

for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-54,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also Gleason v. Mesirow Fin., Inc.,

118 F.3d 1134, 1139 (7th Cir. 1997).  At this stage, a court must view the facts and

draw all reasonable inferences in the light most favorable to the nonmoving party.

Trentadue, 619 F.3d at 652.  The nonmoving party, however, must also provide

evidence in opposition to the motion.  Specifically, "to oppose a motion for

summary judgment, the nonmoving party . . . must do more than raise a

metaphysical doubt as to the material facts.  Rather, [that party] must come forward

with specific facts showing that there is a genuine issue for trial."  Gleason, 118

F.3d at 1139 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475

U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (citations and internal quotation

marks omitted)).  A genuine issue of material fact exists if sufficient evidence

favoring the nonmoving party would permit a jury to return a verdict for that party.

Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008) (citing Sides v. City of

Champaign, 496 F.3d 820, 826 (7th Cir. 2007), and Brummett v. Sinclair Broad.

Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005)).


# V. ANALYSIS

Under the IHRA, it is unlawful for an employer to act with respect to

discharge on the basis of unlawful discrimination.  775 ILCS 5/2-102(A).  The

term unlawful discrimination includes discrimination against a person who is at

least 40 years old.  775 ILCS 5/1-103(Q).

In Zaderaka v. Illinois Human Rights Commission, the Illinois Supreme

Court held that the framework used to address claims under Title VII of the Civil

Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and the Age Discrimination in

Employment Act ("ADEA") (29 U.S.C. § 621 et seq.) would also be appropriate to

decide IHRA cases.  131 Ill.2d 172, 178, 545 N.E.2d 684 (Ill. 1989).

Under the ADEA, the plaintiff bears the burden to demonstrate that, but for

his age, the defendant would not have terminated the plaintiff's employment.
Gross v. FBL Financial Services, Inc., - - - U.S. - - -, 129 S.Ct. 2343, 174 L.Ed.2d
119 (2009).  On summary judgment, a plaintiff need only provide evidence
sufficient to create a genuine issue of material fact on an age discrimination claim.
Yee v. UBS O'Connor, LLC, 2010 WL 1640192, at *17 (N.D. Ill. Apr. 22, 2010).

A plaintiff may establish a genuine issue of material fact on an age
discrimination claim using either the direct or indirect methods of proof.
Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); Ptasznik
v. St. Joseph Hosp., 464 F.3d 691, 695 (7th Cir. 2006).  The direct method of proof
requires an admission of discriminatory intent by the employer or circumstantial
evidence that points directly to a discriminatory reason for the employer's action.
Hemsworth, 476 F.3d at 490 (citing Luks v. Baxter Healthcare Corp., 467 F.3d
1049,1052 (7th Cir. 2006)).  Circumstantial evidence pointing to a discriminatory
reason must connect to the employment action such that a reasonable juror could
infer the employer acted for discriminatory reasons.  See Fleishman v. Continental
Cas. Co., - - - F.3d - - -, 2012 WL 4944321, at *3 (7th Cir. 2012).  Isolated
comments are not probative of discrimination under the direct method unless they
are contemporaneous with the discharge or causally related to the discharge
decision-making process.  Id.

Plaintiff's best evidence under the direct method of proof includes two age-based discriminatory comments Plaintiff states Gary Bengtson and Tim Simmons made during Defendant's restructuring in 2006.  However, these comments were made more than one year before Defendant terminated Plaintiff's employment in 2008.  Comments made two months before an adverse employment decision have been deemed not to be contemporaneous.  See Markel v. Bd. of Regents of Univ. of Wis. Sys., 276 F.3d 906, 910-11 (7th Cir. 2002).  Therefore, Bengtson's and Simmons' 2006 comments are not contemporaneous to the termination decision in 2008, and Plaintiff would not prevail if he proceeded under the direct method of proof.

For the purposes of this Motion, however, Plaintiff attempts to establish a genuine issue of material fact on his age discrimination claim arguing under the indirect method of proof.  The indirect method involves a burden shifting test that federal courts continue to apply on summary judgment in claims made pursuant to the ADEA or analogous IHRA claims like the one at issue here.  Fleishman, 2012 WL 4944321, at *3.  To establish proof of indirect discrimination Plaintiff must first establish a prima facie case of age discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  If Plaintiff succeeds, the burden shifts to Defendant to assert a legitimate, nondiscriminatory

reason for the challenged employment action.  Simmons v. Chicago Bd. Educ., 289

F.3d 488, 492 (7th Cir. 2002).  Neither Plaintiff's burden to demonstrate a prima

facie case nor Defendant's burden to come forward with a legitimate reason for the

adverse employment action are onerous.  Pilditch v. Bd. of Educ. of City of

Chicago, 3 F.3d 1113, 1115 (7th Cir. 1993).  Finally, the burden shifts back to

Plaintiff to present evidence that would allow the trier of fact to conclude that

Defendant's proffered legitimate reason for the employment action is pretextual or

dishonest.  Id.

**A.**    **The Lone Issue in Dispute Under the Indirect Method of Proof Is**
          **Whether Plaintiff Met Defendant's Legitimate Employment**
          **Expectations Prior to the Termination Decision**

The four factors an employee must establish for a prima facie case of

discrimination are that the employee: (1) was a member of the protected class; (2)

met the employer's legitimate business expectations; (3) suffered an adverse

employment action; and (4) was being treated less favorably by the employer than

other similarly situated employees under the age of 40.  Senske v. Sybase, Inc., 588

F.3d 501, 506 (7th Cir. 2009); see also Owens v. Dep't of Human Rights, 403

Ill.App.3d 899, 919, 936 N.E.2d 623 (2010).

Normally courts address all four factors for establishing a prima facie case of

age discrimination before turning to the question of pretext. But for the purposes of

this Motion, Defendant concedes that Plaintiff is a member of a protected class that suffered an adverse employment action and has been treated less favorably by Defendant than other similarly situated employees under the age of 40.  Def.'s Mot. at 17-18.

Therefore, Plaintiff need only demonstrate that he was meeting Defendant's legitimate employment expectations to establish a prima facie case of employment discrimination.

However, Defendant's legitimate non-discriminatory reason for terminating Plaintiff's employment is based on Plaintiff's conduct that Defendant claims fell below the company's legitimate business expectations.  The focus, then, may turn toward pretext.  Specifically, Plaintiff could not establish that he met Defendant's legitimate business expectations without also demonstrating that Defendant's proffered reason for Plaintiff's termination is pretextual.  See Senske, 588 F.3d at 507 (citing Hague v. Thompson Distrib. Co., 436 F.3d 816, 823 (7th Cir. 2006)).

## B.    No Reasonable Juror Could Infer that Defendant's Legitimate Reason For Terminating Plaintiff's Employment Was Pretextual

Plaintiff presents evidence he claims would allow a reasonable juror to infer that Defendant's proffered reason for the termination decision is a pretext to age discrimination.  The evidence includes that: (1) Defendant justified Plaintiff's termination with generalizations of Plaintiff's misconduct; (2) Plaintiff maintained

a stellar sales record before the termination; (3) Defendant disregarded company termination policy; and (4) Bengtson and Simmons made discriminatory statements about older workers in 2006.

Plaintiff may demonstrate pretext directly by establishing that a discriminatory reason more likely motivated the termination, or indirectly by showing that Defendant's explanations are unworthy of credence.  Senske, 588 F.3d at 507 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).  To demonstrate that an employer's explanation is unworthy of credence, an employee must provide evidence demonstrating that the employer's explanation is not the real reason the employer fired the employee, has no grounding in fact, or is insufficient to warrant the termination decision.  Senske, 588 F.3d at 507.  A mistake, bad decision, or even plain stupidity on the employer's part does not establish that the proffered explanation is pretextual.  Essex v. United Parcel Service, Inc., 111 F.3d 1304, 1310 (7th Cir. 1997).  In the end, the question is simply whether a genuine issue of material fact exists on whether the same events would have transpired if Plaintiff had been younger than 40 and everything else had been the same.  Senske, 588 F.3d at 507 (citing Gehring v. Case Corp., 43 F.3d 340, 344 (7th Cir. 1994)).

1.     **Defendant Provides More than Mere Generalizations of Misconduct to Support the Termination Decision**

Plaintiff argues first that a juror could infer pretext because Defendant supports its termination decision with mere generalizations of Plaintiff's misconduct.  Pl.'s Resp. Mot. at 14.

Defendant, however, provides more than mere generalizations.  For example, the decision maker in this case, Gary Bengtson, gave deposition testimony that referred to specific employees who provided negative feedback about Plaintiff's performance.  Bengtson Dep. at 45-65.  The employees included Bailey, Housley, Larson, Simmons, and Jaeger.  Bengtson also stated which comments were solicited or unsolicited.  Bengtson Dep. at 45-65.

Moreover, Bengtson asked Plaintiff about an improper comment Plaintiff made to District Manager Bailey on a customer call.  Plaintiff admitted to Bengtson that he told Bailey to "shut the fuck up and let me handle it."  Lewis Dep. at 113-14.

Finally, Bengtson submitted an Affidavit including negative employee comments regarding Plaintiff, such as "[Plaintiff's] opinion of people is always negative; [and h]e is not assertive on sales calls with customers—he does not take charge and is not in control in those situations."  Employees also expressed concern because "[Plaintiff] has an 'arrogant' air about him; [h]e is not respectful

to his people and can be overbearing and negative[.]"  Moreover, "[Plaintiff's] people do not respect him; [s]ubordinates are afraid to ask for help or advice because they fear being demeaned by him[;] he provides few compliments to his employees; [and h]e has no respect from customers for these same reasons—no real customer relations[,] in fact, several customers do not want him to call on them[,] Lyle Larson . . .[, said] something to the effect of '[Plaintiff] is not assertive on sales calls.  He does not take charge and is not in control.'"  Def.'s Mot. Ex. D, Bengtson Aff. at ¶¶ 7-8..  <u>See</u> Def.'s Mot. Ex. D, Bengtson Aff. at ¶¶ 7-8.  These comments, Bengtson's testimony, and the inappropriate comment to Bailey establish that Defendant and the decision maker Bengtson relied on more than generalizations of Plaintiff's conduct to support the termination decision.

## 2. Plaintiff's Admittedly Good Sales Record Does Not Support an Inference of Pretext Because Defendant Terminated Plaintiff For an Independent Performance Deficiency

Plaintiff also argues that his positive sales record demonstrates Defendant's reason for his termination was pretextual.

Generally, the relevant time to consider a plaintiff's performance is the time of discharge.  But past performance may serve as evidence of pretext if earlier performance reviews undermine the legitimacy of a defendant's reason for terminating a plaintiff.  <u>Testerman v. EDS Technical Products Corp.</u>, 98 F.3d 297,

305-306 (7th Cir. 1996).

The Seventh Circuit addressed this precise issue in <u>Testerman</u> by weighing an employee's older positive evaluations against his newer negative ones.  <u>Id.</u> (7th Cir. 1996).  After weighing the evaluations, the Seventh Circuit affirmed a grant of summary judgment stating the earlier positive evaluations carried little weight because newer negative information supported the termination decision.  <u>Id.</u>  The Seventh Circuit also found it significant that the plaintiff did not contest the new information that formed the basis for his negative evaluations.   <u>Id.</u>

Here, Bengtson made his decision to terminate Plaintiff after receiving new, negative information regarding Plaintiff's performance that provided an independent basis to make the adverse employment decision.  <u>See</u> <u>Testerman</u>, 98 F.3d at 305.  Prior to receiving this new information, Bengtson knew Plaintiff maintained high standards for subordinates but never imagined that Plaintiff treated others so rudely.

Moreover, Plaintiff does not dispute the truth of the negative feedback.  Specifically, Plaintiff stated he has no reason to believe St. Louis District Manager Housley, or Kansas City District Manager Bailey would make false statements about his conduct.  Lewis Dep. at 79-80, 85.  Plaintiff also stated he did not know why Lyle Larson, one of Defendant's Managers subordinate to Plaintiff, would

make false comments.  Plaintiff only speculated that politics may have influenced Larson's feedback.  Lewis Dep. at 76.  Finally, Plaintiff admits he told Bailey "to shut the fuck up and let me handle it" on a customer call.  Lewis Dep. at 113-14. Without evidence to doubt Bengtson's final opinion of Plaintiff's performance, no reasonable juror could infer pretext from Plaintiff's positive sales records.  See Testerman, 98 F.3d at 305; see also Senske, 588 F.3d at 507-09 (stating the plaintiff "pointed to no evidence casting doubt" on the sincerity of the defendant's employment decision).

### 3.    No Evidence Establishes Defendant Deviated From Company Termination Policies

Plaintiff has also submitted Defendant's employment policy manual entitled "recruiting. hiring. firing."  Plaintiff argues the manual demonstrates how Defendant deviated from prescribed policies for disciplining an employee. Plaintiff claims this deviation shows that Defendant's reason for its termination decision is pretextual.

Plaintiff correctly argues that an employer's failure to follow company employment policies is evidence that a jury could reasonably rely on to infer pretext in an age discrimination case.  See Giacoletto v. Amax Zinc Co., 954 F.2d 424, 427 (7th Cir. 1992); see also Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712, 727 (7th Cir. 2005) (relying on Giacoletto to find additional evidence of

pretext where an employer failed to follow company hiring policies).

However, the evidence a court may consider on a motion for summary judgment must be of a type admissible at trial.  And under Federal Rule of Evidence 901(a), Plaintiff must establish authenticity of the manual he submitted by demonstrating that the manual is what the Plaintiff claims.  Only then can a court admit the manual at trial.  The manual Plaintiff submitted, however, contains no supporting affidavit to verify authenticity.  Therefore, the manual may not be considered for the purposes of this Motion.  Scott v. Edinburg, 346 F.3d 752, 759-60 (7th Cir. 2003) (citing Haywood v. Lucent Techs., Inc., 323 F.3d 524, 533 (7th Cir. 2003)); see also Fed.R.Evid. 901(a).

Even if the manual were admissible, Plaintiff presents no evidence that Defendant deviated from company policies.  Specifically, the language in Defendant's manual permits management to dismiss an employee if dismissal represents the "best option."  Pl.'s Resp. Mot. Ex. 2(a), (b) at 50.

Additionally, David Westerfield, Defendant's Senior Director of Human Resources, testified that certain employee conduct warrants immediate firing.  Westerfield Dep. at 17-19.  Westerfield stated that reports from Defendant's employees demonstrate that Plaintiff engaged in conduct that warrants immediate

termination.

Finally, Plaintiff may feel Defendant treated Plaintiff unfairly by abruptly terminating his employment after twenty years of service. But the focus of a pretext inquiry is whether an employer proffered an honest reason for the adverse employment action, not whether the decision was a good business decision, correct, or fair. See Essex, 111 F.3d at 1310. See also Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986) (noting that a court does not examine business decisions). Based on the facts discussed, a reasonable jury could not infer pretext from Plaintiff's claim that Defendant deviated from employment policy.

### 4. No Reasonable Jury Could Infer Pretext From the Age-based Discriminatory Comments Plaintiff States Bengtson and Simmons Made During Defendant's Restructuring in 2006

Plaintiff also states that Gary Bengtson and Tim Simmons made age based discriminatory remarks about older sales representatives during Defendant's restructuring period in 2006. Defendant subsequently terminated those older representatives' employment. Plaintiff claims that these comments and the subsequent termination decisions undermine the credence of Defendant's proffered reason for Plaintiff's employment termination.

Even though the evidence of Bengtson's and Simmons' inappropriate remarks is not directly related to the employment decision, the remarks may

support an inference of pretext.  See Gorence v. Eagle Food Centers, Inc., 242 F.3d 759, 762 (7th Cir. 2001).  The reasonableness of such an inference, however, depends on the nature of the alleged discriminatory remarks, their relationship to the employment decision in question, the nature of the stated reason for the employer's action, and the existence of other evidence calling that reason into doubt.  Huff v. UARCO, Inc., 122 F.3d 374, 385 (7th Cir. 1997) (citing Fuka v. Thomson Consumer Electronics, 82 F.3d 1397, 1406 (7th Cir. 1996)).

Plaintiff states that Bengtson said "we need to get some new blood in here and we have some old guys that are not pulling their weight" during Defendant's restructuring period in 2006.  Pl.'s Resp. Mot. at 17. Plaintiff states that Bengtson made these comments in reference to three older Chicago Region sales representatives.

But Plaintiff admits that these individuals' job performance "was poor," and that "they didn't interject the energy into their territories that they should."  Lewis Dep. at 110.  Plaintiff's admissions about these Chicago sales representatives' performance establishes that Defendant had a reason, independent of the representatives' age, to terminate those representatives' employment.  This renders it more difficult to argue that age was the motivating factor behind those representatives' termination.  If age did not motivate the decision to terminate the

representatives' employment in 2006, Plaintiff cannot now argue that Bengtson's 2006 comments demonstrate a discriminatory intent that also influenced the decision to terminate Plaintiff's employment in 2008.

Plaintiff also states that Simmons alluded to Wisconsin Sales representative Jim Titzkowski when Simmons said in 2006 that "we need to get rid of the old guy[, h]e's a troublemaker."  Lewis Dep. at 107.  But Plaintiff admitted during his deposition that he believed Titzkowski became complacent as he aged.  Lewis Dep. at 108.  Plaintiff's comments demonstrate that Defendant possessed a reason, independent of Titzkowski's age, to terminate the Wisconsin representative's employment as well.

Additionally, even though Simmons provided feedback to Bengtson in 2008 about Plaintiff's performance, Simmons made no employment decisions nor did he have the authority to make the employment decision in this case.  Simmons' limited involvement in the 2008 employment decision renders it far less likely that any discriminatory intent he possessed in 2006 influenced the decision to terminate Plaintiff's employment in 2008.  See Huff, 122 F.3d at 385 (stating courts should analyze the relationship between comments and an alleged discriminatory act where comments are not directly related to the act).

Finally, Defendant possessed a reason independent of Plaintiff's age to make

the termination decision in 2008.  Plaintiff states that Bengtson and Simmons made the discriminatory comments about older workers in 2006.  Between 2006 and Plaintiff's termination in 2008, Bengtson received negative feedback regarding Plaintiff's performance from a number of Defendant's employees.  Plaintiff does not dispute the comments that question his performance.  Plaintiff even admits to telling a District Manager to "shut the fuck up and let me handle it" on a customer call.  Lewis Dep. at 113-14.  These reports about Plaintiff provide an independent basis for the termination decision in 2008.

Based on all of the evidence, no reasonable jury could infer pretext from the comments Plaintiff states Bengtson and Simmons made in 2006.

### 5.    Plaintiff Was Over Forty When Defendant Offered Him the Regional Builder Manager Position and Bengtson Was Older than Plaintiff When Bengtson Made the Decision to Terminate Plaintiff's Employment Further Supporting that No Reasonable Jury Could Infer Pretext in this Case

Finally, the Plaintiff's age when Defendant named Plaintiff Regional Builder Manager, and the age of the decision maker, Bengtson, also render an inference of pretext less likely.

In Rand v. CF Industries, the defendant hired the plaintiff at age 47 and fired him at age 49.  42 F.3d 1139, 1147 (7th Cir. 1994).  The Seventh Circuit found it suspect to claim that a company that hired the plaintiff at age 47 suddenly

developed an aversion to older workers when the company terminated his

employment two years later.  Id.

Similarly, in Ritter v. Hill 'N Dale Farm, Inc., the defendant hired the

plaintiff at the age of 63, and then rehired the plaintiff at 65.  231 F.3d 1039, 1044

(7th Cir. 2000).  The Seventh Circuit inferred in Ritter that a later firing was not

due to the plaintiff's age because the defendant originally hired the plaintiff when

he was 23 years into the protected class.  Id.

In this case, Defendant offered Plaintiff the Regional Builder Manager

position when Plaintiff was 50 years old.  That Plaintiff was already 10 years into

the protected class when Defendant offered Plaintiff the Regional Builder Manager

position decreases the likelihood of pretext.  See Rand, 42 F.3d at 1147; see also

Ritter, 231 F.3d at 1044.

Additionally, it is significant but not dispositive that Gary Bengtson, the

decision maker, is older than Plaintiff, the terminated employee.  See Fairchild v.

Forma Scientific, Inc., 147 F.3d 567, 572 (7th Cir. 1998) (finding it significant that

the decision maker was six years older than the terminated employee).  Because

while persons of any age are capable of age discrimination, it becomes less likely

when the decision maker is older than the terminated employee.  See id.

Accordingly, Plaintiff's and Bengtson's ages render an inference of pretext less

likely in this case.

## VI. <u>CONCLUSION</u>

No genuine issue of material fact exists for trial on Plaintiff's claim for age discrimination because the evidence presented by Plaintiff would not permit a reasonable juror to infer pretext. Therefore, the Court GRANTS Defendant's Motion for Summary Judgment. (d/e 15).

THIS CASE IS CLOSED.

IT IS SO ORDERED.

ENTER: January 29, 2012

FOR THE COURT:                    s/ Sue E. Myerscough
                                    SUE E. MYERSCOUGH
                                    UNITED STATES DISTRICT JUDGE